Good morning. 117-0928 Alberto Soto v. Village of Park Forest Park You may proceed. Good morning. May it please the Court and Counsel. My name is Mike Russin. I'm here on behalf of the Employer of the Day. The issue presented in this case is whether or not there is compensability in a situation where an accident occurs where the climate is not working. The accident occurs here while the climate is participating in an educational activity. The educational activity is voluntary. It's unpaid. There's no wages being paid during the course of this educational activity. It's off-site. It's not being provided by the employer. There's no direction. There's no control by the employer. There's no reimbursement for any type of travel expense. The only actual participation that the employer had with respect to this educational activity is they paid the tuition. They paid the tuition and that's it. Is that significant at all in your mind? They paid the tuition? I really don't think so. The fact of paying for the employer reimbursing, paying the tuition, I think is an insignificant connection to the case. If they didn't want to improve their skills and experience, why would they pay the tuition? For a couple of different reasons. One, I think it was required by the union contract. The fact is, and the evidence really in the case is undisputed on this issue, the employer didn't mandate training. And any of the mandated training required to maintain the skills of the firefighter was provided by the department. And the testimony in that respect is unrefined. In fact, the claimant admitted that any mandatory training was provided by the employer. The chief also testified that any mandated training was provided by the employer. You're not going to argue that the training wasn't beneficial to the employer, are you? It was not required by the employer. I didn't ask you that. I asked you whether you were going to argue that it wasn't beneficial to the employer. I wouldn't argue that it's not beneficial to the employer. Didn't he also get some professional achievement points? Did he get a promotional advancement, compensatory time off, and an annual stipend? Not for completing this class alone. It was for this and two other classes? He had to complete three classes in order to achieve that. So there was some ostensible benefit to the employer. I guess that's what we're wrestling with. He went off and took a vacation days, didn't get any paid, didn't get any benefits. It was voluntary, had nothing to do with the employment. I mean, that's not a fair characterization. Well, to a certain extent, it certainly wasn't a vacation. But it was not required. It wasn't required by the statute. It wasn't required by the state. And it wasn't required by the employer. It was purely voluntary on his standpoint. And it raises the question of, if you find this case compensable, then every educational activity that an employee undergoes that might improve the employee's performance for the employer or for any other employer, therefore becomes compensable. And it really shouldn't be that case if it's not required by the employer. If there's no direction and control by the employer. Because any type of education that benefits... How about if there's an... I mean, they're overstating it somewhat, I suggest. But how about if there's an absolute prohibition by the employer? Is that the way they could stem that? Avalanche with these types of cases that you predict will happen? No, I really don't think so. Really? Well, I think that goes too far. What goes too far? In order for the employer to avoid liability for educational activities to prohibit... Yeah. If they prohibit it, then clearly that would be an absolute bar. So then that's the way to stop that avalanche of cases that might happen if this one were ruled, as you suggested, shouldn't be. You are correct that that would be the way to stop it. But I think that would be an overreach. Why is it an overreach? To prohibit someone from pursuing education. Oh, absolutely, if they're going to be held liable, as you say. Because you're here saying that's the case right now in this individual case, aren't you? Well, what I'm saying is that you shouldn't saddle an employer with liability for a claimant who's seeking education. And if an employee seeks voluntary education, they should be allowed to... Oh, well, you'd advise your employer to say prohibit it. That way you're not here. I mean, that's because you just said that's the way to stop this. Well, it would be the only way to stop it if you ruled this is compensable. Right, that's what I'm saying. If it's ruled compensably, you know, to stop this guy from falling in, which you say might happen, then there's to prohibit it. Yes, the employer would be required... And they could have their own in-house training like they do now. They do. That's what I said. So it wouldn't be that the citizens of the village, wherever it is, Forest Park, you know, wouldn't be denied training and qualified firemen. They'd just do it to prohibit it. They wouldn't put any more posters on the Bolton board or anything or have any training people tell them about it. That would be a solution. Okay. That would be a solution. Counsel, can you summarize how it is that a claimant was not entered in the course of his employment? Yes. In order to be in the course of the employment, you've got to be working. You've either got to be at work or you've got to be on the clock. So I understand that you're arising out of an agreement, and the voluntary gift you're suggesting is voluntary. But what if it was a required course, exact same circumstances, off-site, but it's required training? Is your suggestion here that that still would not be in the course of...? Absolutely not. So just because it didn't happen at the employer's premises doesn't dictate the result in terms of the in course of analysis. Not that at all. But to be in the course of...? Well, you're taking the exact same circumstances here, but instead of it being a voluntary training course, making it a required course, and you've indicated that then would satisfy the in course of fraud, right? Yes. Okay. And according to the testimony from the chief, for all required courses, for all required courses, the claimant is paid wages. In fact, they're paid overturn. So what is it about the voluntary versus required part of it that has any impact on the in course of analysis? Why should that be the deciding factor here? Well, in the course of always reflects on someone who's at work, on the clock. They could be at a different site, but still on the clock. This man was not on the clock. The man was not being paid wages. And one of the critical aspects for in the course of is that you actually have to be working for the employer. Well, isn't it conceptually you're under, the claimant is under the supervision and control of the employer? In a situation where the training is required, yes. No, no. I mean, that's when we're talking about... Yes. In the course of. In the course of. In the course of, there's got to be direction and control from the employer. Right. And in this case, there's no direction and control from the employer because the claimant was not required to participate, and it's off-site, and he's not being paid wages. Both you and the claimant have cited the pedicle and tractor, and I'm just reading from your brief here. Pedicle and tractor injuries sustained on an employer's premises or at a place where the claimant might reasonably have been while performing his duties and while a claimant is at work or within a reasonable time before and after work are generally deemed to have been received in the course of employment. It's indicating that those activities are considered in the course of. It's not saying that anything else is excluded from being considered in the course of. And certainly, any number of cases now that have been decided by this Court have determined the claimant's injury occurred in the course of when it's during a training exercise off-site. You've acknowledged that here, correct? Yes, but only in circumstances where the claimant is being paid. Only in circumstances where the claimant is on the clock. Okay. So you have a case law that says that, that those elements are required to be established in order to find the claimant in the course of. You know, I don't have the case on the tip of my tongue, but I did cite it in my, well, actually, is there a case which says if a claimant is not on the clock, then his case is not compensable? The answer is no, because there haven't been any cases presented like that. In the case that was cited by the arbitrator and the commission cites to it, the Scheffler case, where you have someone off-site and found to be in the course of, that person was actually on the clock. Well, we've had cases involving individuals that were injured because they were injured during the course of physical therapy that obviously occurred off-site. The therapy was necessitated because of the work injury. How would that satisfy in the course of analysis that you're proposing? It's a completely different scenario, because you've got someone who's already sustained a work injury. If they're receiving physical therapy for a work injury, and that becomes a further injury, they've already sustained their work injury. This is a situation where the claimant is not under the direction and control of the employer. He hasn't sustained a work injury because he's not on the clock. And the significant difference is do you have something required by the employer or do you have something voluntary on the part of the employer? I have a question on your use of the term colloquialism, which we all use, on the clock. What do you mean by on the clock? Being paid. Being paid. Being paid. So that there is some form of compensation coming from the employer to the employer? For the work day. Oh. This is not a work day. This is a day when the claimant has taken off work. Okay. Well, that could be... How about his compensation for the activity? Had the activity led to the injury? If there's compensation for the activity, if someone is being paid wages at a point in time when they're doing an off-site required activity, it's a compensable case. So if they're being paid a benefit by the employer, not wages, but a benefit by the employer. I'm not sure what you mean by... Well, in this case, arguably, I think the opposing counsel is suggesting there was a benefit being paid by the employer to this person in the form of a 24-hour comp payday. A stipend. Yeah. It's not a payment of wages. It's a... So that paid 24-hour day wouldn't be recorded on the WTO. You know... Where wages are recorded for federal tax purposes. I would say yes. You would be. Okay. I don't see why the compensation would be the synchronon of whether or not he recovers. Take that out of... And, of course, it refers to the employee being at a place where he's reasonably expected to be performing his or her duties, that is, the firefighter training. What about this tuition? Is the employer paying for tuition for somebody who's not doing what he's supposed to do to benefit the department? Why would they pay the tuition? I think that's your biggest challenge here. I honestly... I respect your question. I honestly don't think that's accurate. But what, then, is the purpose of the tuition? Why are they paying for him to be here if it's unconnected to his duties? Because they agreed to pay for optional training. It would be no different than any employer who provides tuition reimbursement for someone to take additional classes. But why did they do that? The only reason they do that is to benefit themselves. They don't pay for extra training because they don't get a benefit out of it. Does any employer pay for things they get no benefit out of? Training doesn't benefit the department? It may or may not. It would certainly... You know, the question really isn't whether... Well, I will submit to you the question isn't whether or not the employer saw any benefit from the man receiving additional training. Because the whole concept of additional benefit in and of itself, I don't think, has ever been found to be compensable under the Act. The question really, in my mind, is whether there was a requirement that he participate. Was there direction and control by the employer? You know, sometimes I reread my brief after I've written it and I say to myself, you know, you did a fair job, but I'm not all that convinced. And then I go back to the Commission's decision, and the Commission's decision writes my brief a lot better than I wrote my brief. And I submit to you when you look back at the Commission's decision and you look at the first three paragraphs or the last paragraph of the first page and the first three paragraphs of the following page, the Commission sets out exactly their thought process, which I would submit to you is accurate. And the rationale supported by the case law where you have a situation where a claimant engages in a voluntary activity, whether or not the voluntary activity is helpful to him in performing his work duties, it's a voluntary activity. And if the state doesn't require it, if the statute doesn't require it, and if the employer doesn't require it, the fact that the employee doesn't voluntarily can't serve to make it a compensable act. Unless they support it. And here they support it. Well, but every, I won't say every, but many employers pay for tuition reimbursement. And that's what this was. It's a tuition reimbursement. Doesn't it seem kind of arbitrary to find compensability if it's required training versus non-compensability if the employer just says it's strongly encouraged? That's where we're at. Employers are just going to say it wasn't required, it was just encouraged. Well, you're going to have a situation in this case where you can say it was strongly encouraged because the chief testified unrobotted that they had mandatory training and they provide all of it. And when a claimant performs mandatory training, he's paid wages. In fact, he's paid overtime. Okay. You'll have time to reply. Thank you so much. Thank you. Thank you for your time. Good morning, Justice and counsel. My name is Anita DeCarlo on behalf of the plaintiff, Abha Ali. This isn't just any education. This is first responder training to locate and rescue downed firefighters. The village advertised the class. The village was aware of the rigorous nature of the class. The village, through a training officer, recommended that Soto take the class. In addition, 50% of the department take the class at some point. The chief approved the class in addition to 50% of the department. And the village paid for the class, not tuition reimbursement. They physically paid for it in addition to 50% of the department. This class was incentivized by the collective bargaining agreement. When you said not only tuition, they paid more for the course? It wasn't tuition reimbursement. The petitioner never paid for this at all. The village paid directly. Well, they paid the tuition. Correct. Oh, okay. Directly, they did. Directly. Oh, okay. I just was confused that there might have been extra fees or something. They paid for everything associated with that class. And they paid it directly to, I think it was Melrose Park. Cicero Park. Thank you. I apologize. They would take offense at that. So can you answer his basic point that he's trying to make? How is the voluntary participation in this class outside of the department in the course of his official duties? How is this in the course of him performing his duties? Because it makes him a better firefighter. And when you read the type of things that he learned that day, okay, setting up command centers, testing hoses, breaching walls, he was asked, did you ever use this in the course of your regular everyday life? And he said, no, I've never done it. Have you done this as a firefighter? Yes, I've done this as a firefighter. This is making him a better firefighter. Well, isn't it the fact that this training part of two other courses results in a certification, and that certification results in Forest Park paying that fireman more? Correct. And would they pay more to a fireman with less skill? No, they would not. And he's also given the points for the lieutenant's exam. Obviously, the village wants their firefighters better trained. Well, I mean, it answers the question that they pay for better, higher skilled people. Correct. And these are parts of those skills that lead to them willing to pay more money. Correct. So what do you think the rule of this case should be? One, is it compensable? Training exercises to make a firefighter a better firefighter. If an accident happens in the course of that, it's compensable. That's what you're advocating. So I think that the circuit court's decision basically, the point of their decision was it was inappropriate for the commission to say that they're waiving the benefit and saying the man has gotten more of a benefit. Again, I don't think this guy is falling. This isn't any type of class. This is a hidden goal to get. He's not a firefighter looking to become a doctor and taking an anatomy class. No, clearly it was related. But I guess what I'm saying, what is the rule that should be announced? Training that benefits the department is compensable? How does this fit into the requirement in the course of? So in the course of, I think it's the caterpillar. I mean, he's where they expect him to be. They expect him to be there because they advertised it, they recommended it, they incentivized it. I don't think there's any new law being made here. I think the existing law, the framework of it, encompasses a compensable rate. What is the policy behind that language? He's where he's expected to be, which is really foreseeability. Correct. Which we use in traveling employee accounts. What's the underlying policy for that, foreseeability? The underlying policy is that you're still under the employer's umbrella for certain things that you do. I mean, it's foreseeable that somebody's going to go and get additional training. And this is clearly training that they want. Well, isn't the underlying policy of foreseeability that this act is to protect the employees? Right. As well as it's a benefit to the employer. Right. And so something that the employer sees as foreseeable, the employer can take action to protect the employee. Correct. So that if it's foreseeable... Right. And it's also, while protecting the employee, it's protecting the general public. And I think that as a fireman, it's even... Well, I read into this fireman, policeman, military, special citizen class that gets special additional protections. Let's go talk about any normal business. Well, not normal, any other business. You're an insurance agent, employee of an insurance agency. Correct. And on Saturday, you can go take a specialty course in property and casualty insurance. And your agency is paying for the course. It's foreseeable that you're going to be there Saturday. Correct. And you're injured somehow while you're taking that course. Correct. Okay. So would you say the same analysis you're using for firefighters would apply there? I would say so. Okay. You say that finding a claimant under these circumstances, put them in the course of his employment while undergoing voluntary training, wouldn't entail an expansion of the case law. What case law are you pointing to that supports the course of the interview? I do think that Schleswig-Greenhouse, I'm sorry, really speaks to it. I mean, it's foreseeable. You know, the kids are jumping off the roof into the pool, and they knew about it, and it was foreseeable. Here, they knew he was going to this training. It's foreseeable that during rigorous training where they're lifting people and bridging walls, he's going to have an accident. He's going to become injured. I would just, as my opponent asks you to look at the commission decision, I'm just going to ask you to look at that dissent again because I think it was spot on. So thank you. Thank you, counsel. Counsel, you may reply. Just briefly, you know, I think the question and what the dissent brings up in the commission's decision is, do we have an expanded concept of compensability for firefighters and police, or do we apply rules that have been set forth by case law because, you know, you're not going to find something in the statute which specifically says this is what in the course of means. But what in the course of has always meant is that there's some direction of control, that a claimant is on the clock, and whether or not they're at their employer's premises within a reasonable time before or after the event. And, Justice Holdridge, as you're pointing out, if we're not going to make, in order for you to find the case compensable, you've got to make a special rule for firefighters and say that, you know, we're going to give them extra protection for additional training. And I would submit to you, in certain factual patterns, perhaps that would be the case. But in this case, if you look at the claimant's testimony as to whether this activity was in any way required by the employer, and you look at the chief's testimony, you know, frankly, they both say there's required training. The employer provides it. There's optional training. I chose to do this voluntarily. And when you reach the point of I choose to do something voluntarily, and the employer does not have direction and control, then the claim is not in the course of the employment. Thank you. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement, and a written disposition will issue.